The next case on our call this morning is agenda number 11, case number 104-976, People of the State of Illinois v. Wade Beachem. Ms. Bowen, are you ready to proceed? Thank you, Your Honor. Good morning. My name is Mary Bowen. I'm an Assistant State's Attorney with the Cook County State's Attorney's Office. I represent the people of the State of Illinois. May it please the Court, This morning, this is a State appeal from a lower court ruling that determined that the Sheriff's Day Reporting Program, the Cook County Sheriff's Office, is the equivalent of actual custodial confinement for purposes of credit for time served. But the lower court erred when it took the word custody out of context of the Unified Code of Corrections and, in fact, out of context of the credit for time served statute. The legislature didn't define custody in the statute. It didn't define it in the Code of Corrections. But this court is not operating with a blank slate. It has looked at the word custody in the context of this code and, in fact, in the context of this statute. And it has determined that custody is a very elastic term. And it can be defined as everything from the care and control of the thing to constructive control all the way to the end of the continuum actual physical confinement of a person. And it's just a matter of applying principles of statutory construction. And the key, of course, is to consider the statute in terms of the context and the purpose and the goal of the statute itself. And for 30 years, it's actually over 30 years, this court has determined that credit for time served is applicable in situations of actual custodial confinement. And it's done that because it has looked specifically at what are the goals and the purposes of the corrections code. The lower court here, though, looked at this court's construction of custody in the Campa case from a couple of years ago. But Campa was construing, again, a nondefined word of custody in a very different code with a very different purpose. There in Campa, if the court recalls, the point was speedy trial. And the speedy trial statute also uses the term custody, also not defined in the Code of Criminal Procedure. But the goal of speedy trial is to move the trial along, move the pretrial proceedings along, so that trial can take place at a deliberate speed at a purposeful pace. So the idea is to address the defendant's interest to be able to put on a defense and at the same time balance the interest of justice on the people of the state of Illinois. The goal of the credit for time served statute is a very different one. The goal of the credit for time served statute is about ensuring that the defendant doesn't spend more time in incarceration or confinement than the actual sentence of confinement. Counsel? Yes. Could I just discuss for a moment the status of these people? And it may or may not make a difference in the case. Excuse me. And it may or may not be part of the record. But it seems to me these are people who have been in custody, have had a bond set, have not been able to make that bond, and are released by the sheriff into their day reporting center because of a federal order that orders the jail population be controlled at a certain level. So that they are people who are in custody, they've never made bond, and at least one way of justifying that was to say that the jailer could choose the place of custody wherever he wanted to. And I guess my question is, is that in the record? Because if it's not, it's just talk. Well, in terms of how the program – If it is in the record or it is available for us to consider, does it affect or could it affect the outcome of this case at all? I will tell you that it is not in the record. This issue of credit for time served did not occur at the trial proceedings at all. It was raised for the first time in the appellate court. And it was a matter of the mandatory credit for time served issue. So that was raised there for the first time. So there's no discussion at all at the trial court level of how this program works or how it operates or how the defendant is functioning within the program. All we have is a calculation of the time. But, again, we're not operating at a blank slate because in CAMPA, the point of CAMPA, and the reason perhaps that the lower court was trying to apply the CAMPA reasoning was because it was the same sheriff's day reporting program. So there was some information in the CAMPA case about how that program works. There was also information that I've attached in my initial brief to the court that there were evaluations of the program from the Illinois Criminal Justice Information Authority. So there's an on-good authority report that kind of talks about the program and how it works and the different phases of the program. So there's some information. But I don't think that the critical point is whether the defendant is in custody of the sheriff because for CAMPA, this court said, yes, the defendant is in custody of the sheriff. And so for speedy trial purposes, we're going to find that that's broadly defined enough so that we can move this trial along. The sheriff doesn't get to put this person in a day reporting program and then thereby expand the time for which the case goes to trial. But that really doesn't answer the question of whether the person is actually confined. It only answers the question of who has the legal power and control over this individual. Ms. Molan. I'm sorry. Excuse me, Ms. Molan. Sure. But you said that the sheriff has complete control over this individual. The CAMPA court, in the context of the speedy trial analysis, said the sheriff has control over this person. And I would submit to this court that that doesn't answer the question of whether he's confined. But if this defendant doesn't show up for his day reporting, isn't it true he's considered escaped by the sheriff and therefore will be incarcerated in jail? Yes. If he's not really in custody or confined, how can he escape? Because the point is the term custody not being defined. We have to look at all the reasonable definitions, and we have to look at those in the context of the code in which they're being used by the legislature. So when you're using that, when you see that term in speedy trial, and the purpose is to move trial proceedings along, this court determined that the sheriff has the power then to release or not to release the physical body of this person. Nonetheless, we're not going to expand the time frame by which the case has to move along. And that was decided because the sheriff has the power to release this person into these different programs. But the point is the person is released into these different programs. And so the word custody is again used in the Code of Corrections. But the word custody in the Code of Corrections doesn't go to who has legal power. It goes to whether the defendant is actually confined. So it may be that the court has legal power. It may be that the sheriff has legal power. And to harmonize what this court said in CAMPA, it makes sense to me that what happens is you have to look at the context in which the legislature is attempting to use this word. And I would point out to the court that in the speedy trial statute, in the calculation, it says a period of incarceration. It uses the term incarceration. But this court said we're going to treat the control issue of custody. We're going to broadly define it to include control because what we're concerned about in speedy trial is moving the pace of proceedings along. So even though the statute seems to be a narrower definition in speedy trial to only incarceration, this court said we're going to give it a reasonable construction, essentially, not a literal construction. And in the credit for time served statute, what we're really talking about there is not doing a longer sentence than you're ultimately incarcerated for. It's not whether the sheriff can give you the freedom to come and go. It's not whether you're on independent day reporting. It's whether you're in custody. Now, in custodial confinement, I'm sorry, not just custody, but custodial confinement. Now, the legislature has determined that you could be in custodial confinement, even in home confinement. And the defendant makes the point that, well, home confinement could qualify. Why can't day reporting qualify? But the point of that provision that the legislature passed after the Ramos case, which I submit to the court is the governing case, along with the amendment by the legislature, not the Campa case, which never reached this question, but the point of that amendment by the legislature was to say that regardless of where confinement takes place, it's not about geography, it's about the level of restraint over the person. And so regardless of whether it takes place in a home confinement, and this court has found in some other cases that if you're confined to a juvenile facility, a juvenile home, you can still get credit for time served as long as that is confinement, that confinement is custodial in nature. So it makes a difference how many hours a day this person would be in, if they were in day reporting and they had to be there 18 hours. Would that be confinement? No. See, I disagree with this notion that when you go to a facility for classes, for courses, to learn how to get a job, to be a better person in society, to deal with anger management, that you're somehow confined to the level of the confinement required for whether it's incarceration or some detention of your liberty where you are being supervised and monitored to that level. But if you're – I'm having trouble getting a handle on how you want us to define this custody in the Code of Corrections, credit for time – Credit for time served. Time spent in custody. First I thought you were saying you have to be totally confined. But then I think you said, well, you could be on home confinement and it's confinement. But it's confinement. See, it's not just home confinement. The statute was amended by the legislature to say when that home confinement is custodial in nature. So again, the legislature refers back to the word custody. And the point of custody is that you are – your physical restraint is confined. We can confine you to your home and not allow you to leave that home. And the legislature is saying – and by the way, this court has found in the past that counsel commentary is persuasive. And if you go back to 1973 in the counsel commentary, there's a line in there that says irrespective of where the person is confined, they should get credit for time served for being confined. So my point is when you go to a day reporting program, you check in, you sit for a couple of hours in a course, you can also work full time during the day reporting program depending on the level that you're at. You can go out and work and you can call in and say, hi, I'm at work today. That's to me not a level of confinement that equates with either home confinement or in the early permutations of this analysis, confinement in an actual penal institution. It's about the body and the level of restraint on the human body. So how do you want us to define it? I want this definition to reflect that a sheriff's day reporting program is similar to the conditions of intensive probation supervision. And this court has recently in Whitfield said that probation has levels of restraint on it and restrictions, but they certainly don't rise to the level of incarceration. And I would add they don't rise to the level of being confined. This is like a mandatory school attendance policy where you do have to go. And depending on where you are, there's several different tracks. And in some of the materials that I provided to the court, it talks about these different programs. But depending on the track that you're in, you may have to go every day, check in, sit in a course, deal with anger management, deal with jobs training. In other levels of the course, you don't even have to show up. The program is never open in the evenings. It's not open on weekends. It's never open in the holidays. You're going in for a purpose to allow you to continue in the community, to continue functioning and to become a better person. You're not physically confined. Ms. Boland, you said he doesn't have to show up. Depending on the track that you're in, there's several different tracks in these programs. Depending on the track that you're in, you can work full time the entire time you're in the program. Once you reach that level of track. But he has to show up for work. Everyone has to show up for work. And they're not considered confined. He has to show up for work because that's part of his program. But he's not being confined in the jail. He's not being confined by the program. He is subject to these conditions. Just like if you have a condition of probation. You may have to work or go to school as part of your condition of probation. But you're not getting credit for time served for that. So how I want this court to define it is by looking at what is actually occurring. Here we have a person who's showing up on a daily basis or a periodic basis, whatever track he's in. And he has to do certain things to continue in the program to be able to be in the community. That doesn't mean he's the equivalent of a person who is confined at the level of home confinement. And I would submit that in 2000, I think it was in 2000, one of the appellate courts in the Gonzalez case looked at this issue of, well, home confinement could qualify. But there he was allowed out for work and for school. And so the court said you're not confined at the level of being able to be eligible for credit for time served. So I don't think that we define custody the same way in the Code of Criminal Procedure for speedy trial purposes as we define it and as this court has defined it for over 30 years in the Code of Corrections for purposes of credit for time served. And I don't think that simply because the sheriff has the control over the conditions versus the court has the control over the conditions, that that somehow translates itself into being an actual physical confinement. That's what you get credit for time served because that's what we're concerned about with that particular statute. It is not a form of periodic imprisonment, as the defendant argues, either, because that fundamentally is a sentence of imprisonment with some release periods. That's got a special calculation for credit for time served. Ms. Boland. Yes, I'm sorry. In this program, is it true that the participant can be taken back into custody at the will of the sheriff without any hearing? It is true that the sheriff controls the conditions of release. And if they don't follow that, there are opportunities to go back in the stages of being under restraint and the sheriff will, because the sheriff is doing it. There's no judicial intervention into that. My understanding is there's no judicial intervention into that. But I don't think, again, credit for time served doesn't go to the power. I mean, clearly this court said the sheriff has the power. The credit for time served goes to we don't want you serving extra time, so is your body been confined? And I don't think in a day reporting program where you show up and you sit in a course or you sit in a classroom for 50 minutes or three hours or whatever it happens to be, you're at the level of confinement. You're not confined when you're at work. You're not confined when you're at school. You're not confined when you're going to this program, just like you're not confined on intensive probation supervision. You don't get credit for time served for that either. Wouldn't this require that the trial court would have to hold a hearing to determine these issues, how many hours, you know, all these things you've just referenced. In other words, you know, these other things kind of operate automatically. You know, you can look at the jail log and see when they were arrested, date of trial, date of sentencing, why not. But this is going to have to be much more fact intensive, isn't it? But home confinement, for example, the provision that the legislature added in 93 on home confinement is within the discretion of the trial court and only if it's custodial. So there's already a provision that says, you know, you sometimes have to make a determination as to whether it's custodial. And what I'm saying to this court is on the record that we have here and from the materials that are available, the nature and the character of the restraint is much more like intensive probation supervision. It is not like actual confinement. He's not being confined to a home or to a prison or to anywhere else. He's being told show up every day or show up periodically or whenever your conditions, whatever track you're in, you have to show up or either not show up. But you have to follow certain things in the program. That's no different than intensive probation supervision. And because you have to look at the quality of the restraint, that's what I'm asking this court to look at, not this concept of custody as it was defined in CAMPA for a very different reason and a very different purpose. Do we know with precision the quality of the restraint in this case? We don't have any information. It was never raised at the trial level, and we don't have anything other than the calculation of the number of days that he was assigned to the program. So if there are no other questions, I will close and ask this court to reverse and also to modify the incarceration credit fine that is attached to that. Thank you. Thank you, Ms. Boland. Ms. Harrigan. Good morning, Your Honors. My name is Maria Harrigan with the State Appellate Defender's Office representing Wade Beecham. The operative issue in this case is the definition of custody under the statute. And looking to the statute on its face, the State's attorney uses the word confinement a lot. The statute, the legislature, did not restrict this custody to confinement. The word they used was custody. In the case of People v. CAMPA, where there was no definition of custody in the criminal code, as there is in the corrections code there is no definition of custody, this court looked at the plain meaning found in the dictionary and did find it had kind of an unelastic meaning. It was either actual detention or the power to detain or possess. That definition should apply here as well. A close look at the day reporting program shows that the defendant was in the custody of the sheriff. The defendant has to show up every weekday, on time, at the jail. The defendant has to participate in whatever programs are mandated for him. If he's late, if he doesn't show up, or if the sheriff just decides that bed's opened up and this defendant should be back in jail, he can be back in jail. He is under the custody of the sheriff. There's no due process, there's no judicial review on that question. So therefore, he is in custody. Again, the word used in the section that we're talking about of the statute. And within that section, the legislature, when they amended the statute to allow for credit for home confinement, the legislature has allowed for credit for something other than incarceration in a penal institution. And home confinement arguably could be less restrictive than the day reporting program. You are at home. Day reporting, again, you have to show up, drug testing, you're at the jail, and you're subject to incarceration by the sheriff. Whereas on bond with home monitoring, you have a judicial hearing if you violated that bond. And another section of that statute uses the word confinement when talking about psychiatric treatment or drug treatment. Therefore, indicating that confinement is something other than custody. They are different. Not all confinement is custodial. Not all custody is confinement. The word here is custody. And if there's any ambiguity as to the definition, we would argue that the rule of lenity has to apply and the defendant should get the credit if the legislature wishes to clarify, then they can do so. The cases cited by the state, especially Ramos, which they rely on extensively, they're not applicable to the situation. They don't discuss the day reporting program, as was discussed in CAMPA. They were decided prior to the CAMPA decision, and they don't talk about the operative definition of custody under the statute. In Ramos, the defendant was on bond and on home monitoring, and now that person can get credit for that. In the BLS case, which talks about giving the credit for juveniles, they don't talk about what custody means. They just say juveniles should get the same credit that adults get. In Latana, that also ensures that the defendant will get days for the actual time he spent in custody. Again, not going into the question of what custody means. Even the commentary in the statute, the commentary, again, is not addressing custody as confinement. The commentary addresses the issue of whether the defendants actually receive their credit for time served when they are convicted on a charge other than the charge that was originally filed against them. Ms. Harrigan, it appears that this court in Morrison indicated that when we talk about custody, it requires actual confinement for purposes of incarceration credit. Even when we just deal with the word custody, there seems to be a line of cases that say it's actual confinement. So is the issue whether the day reporting program, whether this court believes it was actual confinement or not? I don't believe confinement is the operative word here. I believe it's custody. I believe the defendant in Morrison was also a situation where he was on bond. So he was not just subject to the whim of the sheriff. He would have some kind of due process. Again, that is a different level of custody. Our defendant is under the custody of the sheriff. The only reason the day reporting program was instituted was because of jail overcrowding. Otherwise, he would be in jail. It's not like he made bond with these conditions that he had to comply with. But there seems to be an interplay in some of these cases between custody and requiring actual confinement. So you're saying that this court really doesn't have to look at the nature of the confinement in this case? It's our contention that confinement is not the operative word because that's not the word used in the statute. The word used is custody, and custody does have this elastic definition. And there is this notion of custody of the power that the sheriff, he is definitely in the custody of the sheriff's department. And, again, if there's some ambiguity as to whether they meant custody or confinement, it's not clear in the statute. And the rule of lenity must win out, and the defendant should get the credit. Because the legislature used the word custody in the section. And they used confinement to relate to psychiatric or mental health treatment, indicating that they need something different by the rules of statutory construction. Do you believe that this day reporting, and I understand this isn't your argument, but it falls closer to a form of intensive probation or supervision than it does to incarceration? Well, as we acknowledged in our brief, it's more freedom than 24-hour incarceration in jail. But yet, again, there's the notion of custody, which is the word used in the Code of Corrections, indicates that he can be taken into jail at any time. This is not a person on bond violating a bond condition. Mr. Morgan? Sure. The idea of probation or another kind of decision of what penalty the defendant's going to have, the court made the decision because the defendant didn't make bond for this person to be in custody. Is that right? Well, he was in custody because he couldn't make bond. Then it's the sheriff who made the decision about who to allow to participate in this program. And does the court ever know who's out in this kind of a situation? The court might know in the sense that if there's a status calls and things before trial, like that's often noted on the half sheet. So I assume that the judge is aware of where the defendant is. But you don't know that the judge knows? But I don't know this, again, because this wasn't fleshed out in the trial level. I really don't, you know, there's nothing really on the record except for the number of days that indicates that there was any discussion about this with the trial judge. So the sheriff picks and chooses which person can go in this program or not? It's a, yes, the program is run by the Cook County Sheriff. But I'm saying which defendants are allowed to be in it? Yes, it's normally, you know. Are there any standards to determine that? Nonviolent. I mean, there's a sheet on their web, there's a page on their website. It's typically nonviolent drug offenders who get put in, I mean, you know, people that they would be more likely to, you know, let out. But it is, again, under the jurisdiction of the Sheriff's Department, not the trial judge. The only cases that actually talk about the definition of custody with reference to the day reporting program are People v. Kampa and the appellate court decision, People v. Martin, which is the case that's in conflict with my case below. However, Martin was decided prior to Kampa, this court's decision in Kampa, and relied on Ramos, which, again, was superseded by legislation when the legislature amended the sentencing credit statute to allow for credit for home confinement. And we believe that that was wrongly decided and should be overruled. If there are no further questions, under the plain meaning of the statutory language, the time spent prior to trial in the Sheriff's day reporting program is time spent in custody for purposes of the sentencing credit. Any ambiguity must be viewed in light most favorable to the defendant, and we request that this court affirm the appellate court's decision. Thank you. Thank you, Ms. Harrigan. Rebuttal, Ms. Boland. Thank you. Very briefly. Ms. Boland, I'd like you to respond to Ms. Harrigan's argument, if I understood it correctly, that the statute says that the offender shall be given credit for time spent in custody, and then with regard to home detention or confinement for psychiatric or substance abuse treatment, the statute says, or when the defendant has been confined for psychiatric or substance abuse treatment prior to judgment, if the court finds that detention or confinement was custodial. So it seems to focus on the word custodial, again, as opposed to even confinement alone is not sufficient unless it's custodial. Would you address that? Yes. You know, it would be one thing if we were operating on a blank slate here. It's another that this court has been construing this statute and its precursor for more than 30 years. And for more than 30 years, it's determined that actual physical confinement is what's required. Now, the legislature didn't define custody. It hasn't defined confinement. It hasn't defined psychiatric. It hasn't defined a number of things in this particular statute. But it's not as if this is so ambiguous that we have no guidelines to follow. We know what this court has already determined in the context of this statute. And home confinement or home detention, as it's sometimes called, are phrases that are commonly used, and they're phrases that the legislature put right into the statute. But, again, didn't define those and said that where it's custodial in the meaning of the context of the Code of Corrections, and that has traditionally meant, initially meant incarceration in a penal facility. And as the changing, evolving nature of these correctional programs became known, then it meant confinement irrespective of where you're being confined. And that's why I actually think it's pretty consistent throughout the 30-plus years that the council commentary says, wherever it occurs, whether it's in a juvenile home, whether it's in your home, whether it's in a prison or a jail, you're going to get credit for time served. But it's all about the level of restraint on an individual person. And it may be that if you go to Gateway or one of these programs where you can kind of come and go and check in and check out, that's not going to be at the level of a psychiatric treatment center where you're actually confined to the point where your physical restraint is so limited that we can consider it an actual physical confinement. And so it allows the court discretion in those cases where it's appropriate to consider that. But it's not an automatic grant. It's an automatic grant when you're incarcerated because we know what that means. We've known what that has meant for many years. But there's this evolving nature, and so there's room for that analysis. But that analysis doesn't change the basic core premise that it's all about the restraint of personal liberty. It's not whether the sheriff controls it or whether a court controls it. It's not whether there are extra hearings or no hearings. We recognize that in CAMPA this court said custody includes something that the sheriff sets out as a day reporting program. But that can be harmonized very easily with that doesn't answer the question of actual physical confinement. There are two prongs and two different continuums to the custody analysis. And the legislature has left it to this court, and this court has 30-plus years of analysis in this statute. And it's precursor. So it isn't ambiguous. We don't operate from a blank slate. And Martin was decided correctly because Martin analyzed that, and it's true. Ramis was amended by the statute to include that consideration because there may be times where it is actual physical confinement, regardless of the location, irrespective of the location. But that doesn't change its core premise, that it's a different analysis in a different code in a different statute. Thank you very much. Thank you, Ms. Boland, and thank you, Ms. Harrigan. Case number 104976, people of the state of Illinois v. Wade Beecham, is taken under advisement as agenda number 11.